IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| *In re* SPINNAKER INDUSTRIES, Inc. | : |
| <u>                    Debtor.                    </u> | : |
| | : |
| SP ACQUISITION, LLC, n/k/a, | : |
| Spinnaker Coating, LLC, | : |
| | : |
| Appellant, | : Case No. C2-06-902 |
| | : |
| v. | : **JUDGE ALGENON L. MARBLEY** |
| | : |
| MARK STICKEL, | : |
| Liquidating Agent, | : |
| | : |
| Appellee. | : |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on appeal from the Bankruptcy Court. Defendant SP Acquisition, LLC, now known as Spinnaker Coating, LLC ("SC"), appeals the Bankruptcy Court's entry of partial summary judgment for Plaintiff-Appellee Mark Stickel ("Stickel"), liquidation agent for the bankruptcy trust. For the reasons stated below, the Court **REVERSES** the Bankruptcy Court's grant of partial summary judgment.

**II. BACKGROUND**

In 2001, Spinnaker Industries, Inc., Spinnaker Coating, Inc., and Spinnaker Coating-Marine, Inc. (collectively "Debtors"), petitioned for relief pursuant to Chapter 11 of the

Bankruptcy Code.  Debtors consolidated their motions into a single bankruptcy proceeding.  The Bankruptcy Court appointed Stickel as the liquidation agent of the trust.

SC prevailed over other suitors in a competitive bidding auction for substantially all of Debtors' assets.  Subsequently, SC and Debtors executed an asset purchase agreement ("APA") formalizing the terms of the sale.  The Bankruptcy Court approved the contract and the transaction.  But a dispute arose over SC's liability for professionals' fees arising from the bankruptcy proceedings, owed to attorneys, bankers, administrators, and accountants.  Stickel, on behalf of the liquidation trust, filed an adversary complaint in Bankruptcy Court to resolve the professional fee liabilities.

The parties filed cross-motions for summary judgment disputing the allocation of a particular debt.  Prior to closing, Debtors borrowed $247,845.36 from their debtor-in-possession credit facility ("DIP Facility") to pay various professionals in partial satisfaction of the fee obligation ("DIP Fee Payment").  As required by § 4(c) of the APA,[1] at closing, SC assumed Debtors' obligations under the DIP Facility.  Accordingly, upon completion of the sale, SC repaid the DIP Lenders the $247,845.36 that Debtors borrowed to pay the professional fees.  The parties disputed whether SC was entitled to credit the DIP Fee Payment towards partial

---

[1]Section 4(c) of the APA provides:

<u>Proceeds of Buyer Financing</u>.  The parties hereto acknowledge that Buyer contemplates arranging for the DIP Lenders to provide revolving and term credit facilities on terms and conditions equivalent to Sellers' existing financing or with modifications thereto acceptable to Buyer in its sole discretion (the "<u>Buyer Financing</u>").  Buyer shall use all or a portion of the proceeds of the Buyer Financing (and any other funds required) to repay the total amount of principal, accrued interest and other charges on Seller's debtor in possession financing with the DIP Lenders at Closing (the "<u>DIP Payment</u>").

satisfaction of SC's share of the professional fee obligation.

SC claimed that it was obligated to pay only $1,250,000 of the $1,877,628.40 in professional fees arising from the bankruptcy proceedings. SC cited § 4(b)(i) of the Amended APA, in which SC explicitly assumed liability for:

> post-Petition trade payables and liabilities incurred in the Ordinary Course of Business consistent with present practice in Seller's chapter 11 cases (including an *aggregate of up to $1,250,000 for court-retained professionals' fees and reimbursement of Sellers for court-approved amount already paid*, but excluding (x) any such professionals' fees in *excess of such amount* and (y) any amounts payable to Deloitte Touche under Section 3 of this Agreement). . .[.]

Amended APA § 4(b)(i), 4 (emphasis added).

Pursuant to § 4(b)(i), SC argued that the APA capped its professional fee obligation at $1,250,000. Since § 4(c) obligated SC to repay the DIP Lenders for the $247,845.36 that Debtors borrowed to pay professional fees, SC contended it should be permitted to credit the DIP Fee Payment towards partial satisfaction of its $1,250,000 professional fee obligation. The Bankruptcy Court disagreed.

On summary judgment, the Bankruptcy Court held that the contractual obligation undertaken by SC in § 4(b)(i) of the Amended APA is separate and distinct from that imposed by § 4(c). In other words, the court concluded that SC's obligation to repay the DIP Lenders was distinct from its professional fee obligation. Thus, the Bankruptcy Court held that SC could not apply the DIP Fee Payment towards partial satisfaction of its professional fee obligation. SC appeals the Bankruptcy Court's ruling to this Court.

### III. STANDARD OF REVIEW

The District Court, serving in an appellate capacity, reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997). The Court will only construe the Bankruptcy Court's factual findings as clearly erroneous where, "on the entire evidence, [the Court] is left with the definite and firm conviction that a mistake has been committed.'" *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993). But the Court reviews the propriety of summary judgment de novo. Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, the parties stipulate to the undisputed facts. Summary judgment is therefore appropriate.

### IV. ANALYSIS

The APA is governed by New York law, Amended APA § 16(j), under which the interpretation of an unambiguous contract is a matter of law to be decided by the courts. *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 142 (S.D.N.Y. 2004); *see also Kass v. Kass*, 696 N.E.2d 174, 176 (1998). In this case, it is unnecessary to journey beyond the four corners of the contract. Since the parties stipulate that the APA is an unambiguous and fully integrated agreement, the Court must "assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).

The plain and ordinary meaning of the APA limits SC's obligation for professional fees

to $1,250,000. The "Fee Cap" language of § 4b(i) specifically confines SC's liability to:

> . . . an **aggregate** of **up to** $1,250,000 for court-retained professionals' fees and reimbursement of [Debtors] for court-approved amounts already paid, but **excluding** . . .(x) any such professionals' fees **in excess** of such amount.

Amended APA, (emphasis added).

The Fee Cap has two notable clauses. First, the provision explicitly limits SC's obligation for professional fees to "an aggregate of up to $1,250,000." *Id*. This clause is unambiguous. The Bankruptcy Court approved a total of $1,877,628.40 in professional fees arising from the bankruptcy proceedings, to be divided between the parties pursuant to the APA. The Fee Cap states, in clear language, that SC will only be obligated for $1,250,000 of the $1,877,628.40. No more. As if to underscore this point, the Fee Cap further states that SC will not be liable for any "professionals' fees in excess" of $1,250,000. *Id*. To give the Fee Cap meaning, the Court must apply all professional fees paid by SC, including the DIP Fee Payment, towards SC's $1,250,000 professional fee obligation.

Stickel, parroting the Bankruptcy Court, has two counter-arguments. First, Stickel contends that SC's obligation to pay Debtors' DIP Facility is independent of, and not inconsistent with, SC's professional fee obligation. That is, SC undertook two separate contractual obligations: (1) to pay $1,250,000 in professional fees; and (2) to pay the balance on the DIP Facility. These obligations, contends Stickel, are completely unrelated. Admittedly, the parties did not expressly contract to apply professional fees paid from the DIP Facility towards SC's fee obligation. Also in Stickel's favor, SC had a duty to pay off the balance of the DIP Facility regardless of how Debtors' spent the borrowed money, whether on professional fees or on sheet metal. Thus, Stickel concludes that the DIP Facility obligation under § 4(c) did not

limit or modify SC's professional fee obligation under § 4(b)(i).

But Stickel's construction of the APA eviscerates the Fee Cap. Stickel ignores the well-established canon of construction that a contract should be interpreted to give meaning to all of its provisions. *Malleolo v. Malleolo*, 287 A.D.2d 603, 603-604 (N.Y. A.D. 2001). Consider the following hypothetical. What if Debtors borrowed $1,877,628.40 from the DIP Lenders to pay all of the professional fees arising from the bankruptcy proceedings? If the DIP Fee Payment could not be credited to satisfy SC's professional fee obligation, the APA would require SC to repay the DIP Lenders the full $1,877,628.40. In that case, Debtors would not pay anything and SC would be liable for one hundred percent of the professional fees. The Fee Cap would be meaningless. Thus, the plain meaning of the contract does not decouple the DIP Facility obligation from the Fee Cap.

Stickel's interpretation also offends the canon of construction that where there is an inconsistency between a specific and a general contractual provision, the specific provision controls. *See Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956). Section 4(c) is a general contractual provision obligating SC to repay the DIP Facility. Section 4(c) is silent on whether any money that Debtors borrowed from the DIP Lenders to satisfy professional fee obligations can be credited towards SC's fee obligation. But §4(b)(i) is specific. It explicitly limits SC's exposure for professional fees to $1,250,000, *regardless* of the method of the payment. Specific provisions prevail.[2] *See Lewiston-Porter Cent. Sch. Dist. v. Sobol*, 546

---

[2] Stickel argues that this canon only applies where the provisions at issue are inconsistent. He contends that the DIP Facility obligation in § 4(c) is not inconsistent with SC's professional fee obligation under § 4(b)(i). But as interpreted by Stickel, the provisions are inconsistent. As discussed above, decoupling the DIP Facility obligation from the fee obligation would eviscerate the Fee Cap.

N.Y.S. 2d 227, 229 (N.Y. App. Div. 1989).  Thus, the DIP fee payment should count towards SC's professional fee obligation.

Stickel's second argument is similarly specious.  Stickel contends that the Fee Cap provision enumerates two independent obligations:

> . . . an aggregate of up to $1,250,000 for court-retained professionals' fees **and** reimbursement of [Debtors] for court-approved amounts already paid, but excluding . . . (x) any such professionals' fees in excess of such amount.

Amended APA, § 4(b)(i), at 14 (emphasis added).  Stickle admits that SC is unquestionably liable for up to $1,250,000 in professionals' fees.  *Id*.  But Stickle contends that in addition, SC is obligated to reimburse Debtors for any court approved fees already paid.  *Id*.  In other words, the Fee Cap does not apply to the Debtor reimbursement clause.  Accordingly, Stickel concludes that SC must pay up $1,250,000 for fees and reimburse DIP Lenders for the DIP Fee Payment.

But Stickel's construction of the APA is inapposite and would render the Fee Cap meaningless.  Stickel ignores the phrase "but excluding any such professional fees in excess of" $1,250,000, which unambiguously cabins SC's liability for professional fees.  *Id*.  The Court declines the invitation to conclude that Debtors can circumvent the Fee Cap by resorting to the reimbursement provision.  The plain and ordinary meaning of the APA limits SC's obligation for professional fees to $1,250,000, *regardless* of the nature of the payment.  Whether SC paid the fees directly, reimbursed Debtors, or repaid loans taken out by Debtors to pay fees, SC's exposure for professional fees cannot exceed $1,250,000.

In order to give meaning to the Fee Cap, and according to the plain and unambiguous language of the APA, the DIP Fee Payment should apply towards SC's professional fee obligation, which is now fully satisfied.

## IV. CONCLUSION

For the foregoing reasons, the Court **REVERSES** the Bankruptcy Court's grant of partial summary judgment for Plaintiff-Appellee Stickel.

**IT IS SO ORDERED.**

                                                     s/Algenon L. Marbley
                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED: September 29, 2007**